IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

   Plaintiff/Counter-Defendant,

   v.

INTERSTATE UNDERGROUND
WAREHOUSE & STORAGE, INC.,

   Defendant/Counter-Plaintiff.

and

AMLIN CORPORATE MEMBER,
LTD., ACE CAPITAL LIMITED, ACE
CAPITAL V LIMITED, and CATLIN
SYNDICATE LIMITED,

   Plaintiffs,

   v.

INTERSTATE UNDERGROUND
WAREHOUSE & STORAGE, INC.

   Defendants.

Case No.: 4:16-cv-00136

**WESTCHESTER'S SUGGESTIONS IN OPPOSITION TO
INTERSTATE'S MOTION TO QUASH SUBPOENA *DUCES TECUM***

Plaintiff/Counter-Defendant, Westchester Surplus Lines Insurance Company ("Westchester"), submits its Suggestions in Opposition to Defendant/Counter-Plaintiff, Interstate Underground Warehouse & Storage, Inc.'s, Motion to Quash Subpoena *Duces Tecum*, Dkt. 48.

# I.
# INTRODUCTION

Interstate's motion to quash Westchester's subpoena *duces tecum* to Paul L. Hilpman, Ph.D., should be denied. A subpoena issued pursuant to Rule 45 is an appropriate mechanism for obtaining discovery from nonparties such as a party's expert witness. Notwithstanding the limitations placed on expert discovery by Rule 26(a)(2) and (b)(4), Westchester's subpoena seeks discoverable material. By identifying Mr. Hilpman, without objection, as an individual with knowledge regarding the factual basis for an allegation in Interstate's First Amended Counterclaim, Interstate acknowledged that he possesses discoverable information other than in his capacity as an expert witness retained in anticipation of litigation in this matter. Even with respect to his capacity as an expert witness, the subpoena seeks material not within the protected categories identified in Interstate's motion, i.e. communications with Interstate's counsel, documentation of preliminary opinions, and draft reports. To that extent, at minimum, there are no grounds to quash Westchester's subpoena.

# II.
# RELEVANT FACTS

This litigation commenced on February 18, 2016. *See* Dkt. 1. Interstate, however, claims to have retained Mr. Hilpman "to provide expert services in this matter," in June 2015 Dkt. 48, p. 3. On August 9, 2016, Mr. Hilpman attended the mediation with Interstate. The day before, on August 8, 2016, Westchester served its First Set of Interrogatories to Interstate. Among other things, the interrogatories sought the factual basis for various allegations in Interstate's First Amended Counterclaim ("FACC") regarding the dome-outs that allegedly occurred on June 1, 2014, June 26, 2014, August 29, 2014, and December 2, 2014, as well as the identity of the individuals with knowledge of or information regarding those facts. Interrogatory No. 5, for

instance, requested the factual basis for Interstate's allegations, in Paragraph 16 of the FACC, regarding the June 1, 2014 dome-out, and the identity of each person with knowledge of or information regarding those facts.

Interstate answered Interrogatory No. 5 without objection, and identified four people with knowledge of those facts: James Shockey, Wayne Reeder, Amanda Plotner, and Paul L. Hilpman, Ph. D. *See* Exhibit A, Interstate's Objections and Answers to Westchester's First Set of Interrogatories, at pp. 6-7. Interstate gave no indication as to Mr. Hilpman's role in this litigation, the capacity in which he acquired whatever information he had that was responsive to Interrogatory No. 5, or that any information he had was privileged. Quite the opposite, in fact. While Interstate provided only Mr. Reeder's and Ms. Plotner's names and stated that they could be contacted through counsel, it provided Mr. Hilpman's address and phone number without qualification.

Prompted by Interstate's answer to Interrogatory No. 5, Westchester prepared the subpoena *duces tecum* attached as Exhibit A to Interstate's motion. On November 23, 2016, pursuant to Fed. R. Civ. P. 45(a)(4), Westchester gave Interstate notice and a copy of the subpoena, including the rider listing the documents requested. *See* Exhibit B, Notice of Intent to Serve Subpoenas Duces Tecum. Westchester waited 8 days before issuing the subpoena to Mr. Hilpman. On December 1, 2016, having received no objection or response from Interstate's counsel, Westchester issued the subpoena for service to Mr. Hilpman at the address Interstate had provided in its answer to Interrogatory No. 5.

The subpoena commanded Mr. Hilpman to produce the following documents on or before December 20, 2016:

1. All communications and any other documents relating to a Rock Fall Event at the Facility occurring on or about June 1, 2014.

3

2. All contracts or other written agreement(s) between You and Interstate to provide labor, materials, equipment, assistance, support, or services of any kind in connection with the Fire and Explosion, any subsequent Rock Fall Event, or Interstate's insurance claim for damage caused by any of the foregoing.

3. All invoices, bills, receipts, and any other documentation of reflecting amounts charged, billed, or invoiced by You for materials, services, assistance, or support in connection with the Fire and Explosion or any Rock Fall Event.

4. All photographs and video recordings, in digital format where available, depicting damage caused by the Fire and Explosion or any Rock Fall Event.

5. All communications, including e-mails, and all documents attached to or enclosed with those communications, between You and any other person or entity regarding the Fire and Explosion, any Rock Fall Event, or Interstate's insurance claim for damage caused by any of the foregoing.

6. All reports, conclusions, findings, recommendations, or opinions, whether generated by You or someone else, regarding:

    a. the cause(s) of, and/or relationship(s) between, any Rock Fall Events at the Facility at any time;

    b. the relationship between any Rock Fall Events at the Facility; or

    c. the extent of damage caused by any Rock Fall Events at the Facility.

7. All maps, drawings, diagrams, or other depictions of all or any part of the Facility identifying the location(s) of any Rock Fall Events at any time.

8. All notes, memoranda, or other documentation prepared in connection with any visit to or inspection of any Rock Fall Events.

Exhibit C, Subpoena to Produce Documents, at pp. 4-5.

A certified mail return receipt signed by Mr. Hilpman indicates that he received the subpoena on December 7, 2016. Interstate filed this motion to quash the subpoena on December 20, 2016. Interstate's counsel did not, prior to filing its motion, attempt to confer with Westchester's counsel regarding the relief requested. *See* L.R. 37.1(a).

4

# III.

# ARGUMENT

**A.  Fed. R. Civ. P. 26(a)(2) and (b)(4) Are Not The Exclusive Means Of Obtaining Discovery From Retained Experts.**

Interstate contends that documents in possession and control of retained experts are not subject to discovery under Fed. R. Civ. P. 45, and that Fed. R. Civ. P. 26(a)(2) and (b)(4) provide the sole means by which a party can obtain discovery from another party's retained expert.

Interstate is wrong. Rule 26(a)(2) describes documents and information that a retained testifying expert *must* disclose pursuant to a schedule set by the Court. Rule 26(b)(4) describes documents and information which are *not* subject to disclosure or which must be disclosed only in certain limited circumstances. In other words, Rule 26(b)(4) limits the scope of discovery otherwise available under Rule 26(b)(1) when it comes to retained testifying experts; it does not, itself, set the universe of discoverable information available from those experts.

The advisory committee notes to the 2010 amendments to Rule 26 are perfectly clear that Rule 26(b)(4)(B) and (C) do not limit discovery available from retained experts beyond what is specifically stated therein:

> Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions. For example, the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule. Similarly, inquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule. Counsel are also free to question expert witnesses about alternative analyses, testing methods, or approaches to the issues on which they are testifying, whether or not the expert considered them in forming the opinions expressed.

Fed. R. Civ. P. 26, advisory committee notes (2010) (subdivision (b)(4)).

Indeed, Rule 26(b)(4)(C) expressly contemplates discovery of documents from retained experts beyond those that are required to be disclosed pursuant to Rule 26(a)(2). The rule states

5

that the work product privilege described in Rule 26(b)(3)(A) and (B) protects communications between a party's attorney and a testifying expert retained by that party; by implication, communications between the expert and people other than the party's attorney are *not* shielded from discovery by Rule 26(b)(3). The rule goes on to state that there is no work product protection for communications between the expert and the party's attorney to the extent they relate to compensation for the expert's study or testimony, or identify facts, data, or assumptions provided to the expert by the party's attorney. *See* Fed. R. Civ. P. 26(b)(4)(C).

Because these documents are not necessarily included in the mandatory disclosures required by Rule 26(a)(2), there must be a mechanism for an opposing party to obtain these documents. *See United States v. Bazaarvoice, Inc.*, 2013 WL 3784240, at *2 (N.D. Cal. July 18, 2013) ("Rule 26(a)(2)(B) governs only disclosure in expert reports, however, and it does not preclude parties from obtaining further information through ordinary discovery tools."). One such mechanism, the one that Westchester employed, is a subpoena for production of records pursuant to Rule 45. There is no shortage of cases recognizing that "a subpoena *duces tecum* issued pursuant to Rule 45 is an appropriate discovery mechanism against nonparties such as a party's expert witness." *Expeditors Int'l of Wash., Inc. v. Vastera, Inc.*, 2004 WL 406999, at *3 (N.D. Ill. Feb. 26, 2004) (citing cases); *All W. Pet Supply Co. v. Hill's Pet Prods. Div.*, 152 F.R.D. 634, 639 (D. Kan. 1993) ("With regard to nonparties such as plaintiff's expert witness, a request for documents may be made by subpoena *duces tecum* pursuant to Rule 45.").

**B.     The Subpoena Requests Documents Within The Scope Of Discovery Permitted By The Federal Rules.**

A threshold question is whether Mr. Hilpman has information in a capacity other than as a retained expert in anticipation of litigation. Interstate's answer to Interrogatory No. 5, in which it identifies Mr. Hilpman without objection as a person with knowledge regarding the factual basis

6

for Interstate's allegations regarding the June 1, 2014 dome-out, indicates that he does. To the extent Mr. Hilpman is in possession, custody, or control of documents responsive to the subpoena and which reflect the knowledge referred to in Interstate's answer to Interrogatory No. 5, they must be produced regardless of the protections afforded to expert witnesses under Rule 26.

With respect to Mr. Hilpman's status as an expert witness, Interstate contends that the subpoena in this case exceeds the scope of disclosure required by Fed. R. Civ. P. 26(b)(4) because it requests communications between Mr. Hilpman and Interstate's counsel, documentation of preliminary opinions, and draft reports, all of which Interstate claims are protected from disclosure under Rule 26(b)(3)(A) and (B), and 26(b)(4)(B) and (C). However, those materials only encompass a small part of what is sought in the subpoena. Interstate raises no specific objection to the majority of material requested.

Excluding the three categories of protected information Interstate describes in its motion, the subpoena still requests the following discoverable material: communications with anyone other than Interstate's counsel regarding the fire, explosion, or any rock fall event (*See* Ex. C, at pp. 4-5, No. 1, 5); photographs and video recordings of any damage caused by the fire, explosion, or any rock fall event (No. 4); maps, drawings, or diagrams depicting the location(s) of any rock fall events (No. 7); reports generated by anyone other than Mr. Hilpman regarding the cause(s) of, relationship(s) between, or extent of any damage caused by, any rock fall events at the facility (No. 6); and documentation of the compensation paid, or to be paid, to Mr. Hilpman for his services (No. 2, 3).

None of the provisions of Rule 26 that Interstate relies on shield the materials described in the preceding paragraph from discovery, regardless of Mr. Hilpman's status as a retained expert in this matter. Indeed, Rule 26(b)(4)(C) explicitly states that communications that relate to

7

compensation, facts or data provided by Interstate's attorney, and assumptions provided by Interstate's attorney are not shielded from discovery.

For the foregoing reasons, Interstate's motion to quash the subpoena to Mr. Hilpman must be denied at least with respect to the requests described above.

## IV.
## CONCLUSION

WHEREFORE, Plaintiff/Counter-Defendant, Westchester Surplus Lines Insurance Company, respectfully requests that this Honorable Court enter an order denying Defendant/Counter-Plaintiff, Interstate Underground Warehouse & Storage, Inc.'s, Motion to Quash Subpoena *Duces Tecum*, and granting any other and further relief it deems just and appropriate.

/s/Matthew P. Fortin
Matthew P. Fortin (pro hac vice)
mfortin@fgppr.com
Matthew S. Ponzi (pro hac vice)
mponzi@fgppr.com
Foran Glennon Palandech Ponzi & Rudloff PC
222 N. Lasalle Street, Suite 1400
Chicago, Illinois 60601
(312) 863-5000
Attorneys for Westchester Surplus
Lines Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/Matthew P. Fortin
Matthew P. Fortin